IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| SWEETWATER APARTMENTS, P.A., LLC, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | CASE NO. 2:11-CV-155-WKW [WO] |
| WARE CONSTRUCTION SERVICES, INC., d/b/a WCS CONSTRUCTION, INC., and THE GUARANTEE COMPANY OF NORTH AMERICA USA, | ) ) ) ) ) ) | |
| Defendants. | ) | |

## **MEMORANDUM OPINION AND ORDER**

Plaintiff Sweetwater Apartments, P.A., LLC, brings this breach-of-contract lawsuit against Defendants Ware Construction Services, Inc., ("WCS") and The Guarantee Company of North America USA ("GCNA"). The case is before the court on GCNA's Motion for Summary Judgment (Doc. # 43), which is accompanied by a brief and an evidentiary submission. (Doc. # 44.) Plaintiff filed a response in opposition (Doc. #56), to which GCNA replied. (Doc. # 61.) Upon consideration of the parties' briefs, the relevant law, and the record as a whole, the court finds that GCNA's Motion for Summary Judgment is due to be denied.

## I. JURISDICTION AND VENUE

Subject matter jurisdiction is exercised pursuant to 28 U.S.C. § 1332. Personal jurisdiction is not contested and is supported by adequate allegations. Venue is proper in the Middle District of Alabama, having previously been transferred from the Southern Division to the Northern Division. (Feb. 29, 2012 Order (Doc. # 50).)

## II. STANDARD OF REVIEW

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Greenberg v. BellSouth Telecomms., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (*per curiam*) (quoting Fed. R. Civ. P. 56(a)). The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322–24.

If the movant meets its evidentiary burden, the burden shifts to the nonmoving party to establish, with evidence beyond the pleadings, that a genuine issue material to each of its claims for relief exists. *Celotex Corp.*, 477 U.S. at 324; *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). What is material is determined by the substantive law applicable to the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (*per curiam*) (internal quotation marks and citation omitted).

A genuine issue of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor. *Greenberg*, 498 F.3d at 1263; *Waddell v. Valley Forge Dental Assocs.*, 276 F.3d 1275, 1279 (11th Cir. 2001). However, if the evidence on which the nonmoving party relies "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50 (citations omitted). "A mere 'scintilla' of evidence supporting the [nonmovant's] position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party," *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990), and the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts,"

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine issue of material fact and do not suffice to oppose a motion for summary judgment. *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (*per curiam*). Hence, when a plaintiff fails to set forth specific facts supported by appropriate evidence sufficient to establish the existence of an element essential to his case and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex Corp.*, 477 U.S. at 323.

On summary judgment, the facts must be viewed in the light most favorable to the nonmovant. *See Lee v. Ferraro*, 284 F.3d 1188, 1190 (11th Cir. 2002). Thus, "'facts, as accepted at the summary judgment stage of the proceedings, may not be the actual facts of the case.'" *Id.* (quoting *Priester v. City of Riviera Beach*, 208 F.3d 919, 925 n.3 (11th Cir. 2000)).

### III. BACKGROUND

In the fall of 2007, Sweetwater contracted with WCS, as the general contractor, for the construction of a multi-unit private apartment complex in Prattville, Alabama. On October 22, 2007, WCS subcontracted with Wainwright to install the complex's storm drain system. (Subcontract (Ex. B to Doc. # 44).) At Wainwright's request, and in conformance with the subcontract, GCNA issued an AIA A312 performance

bond to cover the subcontract. (Performance Bond (Ex. A to Doc. # 44).) Wainwright was the named obligee on the bond, and Sweetwater was added as a dual obligee.[1] The project was completed in the fall of 2008. On November 10, 2008, the City of Prattville issued a Certificate of Occupancy. On November 11, 2008, Wainwright issued Sweetwater a one-year warranty in conformity with the subcontract's requirements. (Warranty (Ex. 6 to Doc. # 56).)

On May 26, 2009, Sweetwater notified Wainwright that large sink holes on the property needed to be repaired.[2] (May 26, 2009 Fax (Ex. C to Doc. # 44).) On June 10, 2009, Sweetwater sent a letter to WCS and Wainwright, seeking repairs to be made to the storm drain pipe servicing pursuant to the warranty. (June 10, 2009 Letter (Ex. C to Doc. # 44).) Wainwright replied that it would meet to discuss the repairs but that it maintained that the "installation of [the] storm drain pipe was properly done according to design plans . . . ." (June 12, 2009 Letter (Ex. C to Doc. # 44).) Throughout that summer, Sweetwater contacted Wainwright numerous times, asking Wainwright to make the repairs to the storm drains and insisting that these repairs were covered under the warranty. Wainwright never made the repairs.

---

[1] Wachovia Bank was also added as a dual obligee but is not a party to this lawsuit.

[2] GCNA submits that on May 7, 2009, "Prattville experienced a massive rainfall resulting in unprecedented floods, including in the project area." (Doc. # 44, at 4.) It argues that this "100 year flood" is the culprit behind Sweetwater's repair problems. The cause of the needed repairs, however, has no bearing on the issues to be decided in this opinion.

5

Finally, on October 13, 2009, Sweetwater notified GCNA of its attempts to have Wainwright fix the issues at the apartment complex. Sweetwater requested that GCNA "as surety for [Wainwright], step in and complete [the] repairs as required to the storm drain." (Oct. 13, 2009 Letter (Ex. C to Doc. # 44).) Wainwright and GCNA both assured Sweetwater that Wainwright would make the repairs. (Oct. 14, 2009 Letter and Oct. 27, 2009 Letter (Ex. C to Doc. # 44).) GCNA noted that it reserved its rights and defenses under the bond.

In December 2009, Sweetwater again wrote to Wainwright and GCNA that Wainwright had yet to make the requested repairs. (Dec. 14, 2009 (Ex. C to Doc. # 44).) At the end of December, Wainwright filed for bankruptcy. (Mar. 29, 2010 Letter (Ex. 3 to Doc. # 56).) In early January 2010, GCNA informed Sweetwater of its position "that the assertion of any claim under the performance bond [was] premature" because there were "specific conditions precedent to the assertion of any claim under the performance bond which [had] not been met[.]" (Jan. 4, 2010 Letter (Ex. 1 to Doc. # 56).) Sweetwater requested a meeting with GCNA and Wainwright pursuant to § 3.1 of the bond. GCNA declined to attend the meeting. (Feb. 8, 2010 Letter (Ex. 5 to Doc. # 56).) On March 9, 2010, Sweetwater declared Wainright to be "in default" and hired an outside contractor to make the repairs. (Mar. 9, 2010 Letter (Ex. 2 to Doc. # 56).) In response, Wainwright informed Sweetwater that it had filed

6

for bankruptcy in December and to direct all communications to its bankruptcy attorney. (Mar. 29, 2010 Letter.)

Sweetwater filed suit on March 4, 2011, against WCS and GCNA and brought claims for breach of the prime contract, breach of the bond contract, and breach of warranty. Wainwright was not added as a party because it had filed for bankruptcy. On March 26, 2012, WCS was permitted to add Wainwright as a third-party defendant as the bankruptcy court had issued an order terminating the automatic stay. WCS filed a third-party complaint against Wainwright, asserting claims for indemnity (contractual and common law) and breach of warranty. (Doc. # 57.) The parties engaged in a private mediation on May 3, 2012, during which Sweetwater resolved its claims against WCS, and WCS resolved its claims against Wainwright. (Docs. # 70 & 71.) Both WCS and Wainwright have since been dismissed as parties to this action. Sweetwater and GCNA were unable to resolve their disputes during mediation, leaving GCNA's motion for summary judgment to be decided.

## IV. DISCUSSION

GCNA asserts several arguments as to why its motion for summary judgment is due to be granted. First, GCNA argues that neither Sweetwater nor WCS has met all of the conditions precedent necessary to make a claim under the bond. Second, GCNA argues that Sweetwater's claim is barred by the bond's limitations period.

Third, GCNA argues that Sweetwater's claims for replacement of the entire drainage system are outside the warranty period. GCNA's arguments regarding the bond's limitations period will be addressed first, followed by a discussion of the parties' obligations under the bond, and finishing with GCNA's arguments regarding the warranty period.

## A.     The Bond's Limitations Period

GCNA argues that Sweetwater's claims are time barred pursuant to § 9 of the bond. Section nine requires that "[a]ny proceeding, legal or equitable, under this Bond . . . shall be instituted within two years after Contractor Default or within two years after the Contractor ceased working or within two years after the Surety refuses or fails to perform its obligations under this Bond, whichever occurs first." GCNA contends that the first occurrence to trigger § 9 was when Wainwright stopped working on the project, which was at the latest November 10, 2008. GCNA argues that, under the bond, Sweetwater had two years to file suit, starting from November 10, 2008. Sweetwater did not file suit until March 4, 2011, which is outside the two-year limitations period. Sweetwater argues that its suit is timely because the bond's two-year limitations provision is void under Alabama law, and that a six-year statute of limitations applies instead.

By Alabama statute, "any agreement or stipulation, verbal or written, whereby the time for the commencement of any action is limited to a time less than that prescribed by law for the commencement of such action is void." Ala. Code § 6-2-15. The statute of limitations on a contract claim is six years. Ala. Code § 6-2-34(9). The bond, however, limits the time to commence suit to two years. Because the bond limits the statute of limitations prescribed by law, the bond's two-year limitations provision is void, pursuant to § 6-2-15. *See Turner v. Westhampton Court, LLC*, 903 So. 2d 82, 91 (Ala. 2004) (holding that § 6-2-15 voided a warranty's ninety-day statute of limitations because it shortened the six-year statute of limitations on a breach-of-warranty claim"); *see also Sheehan v. Morris Irrigation*, 410 N.W.2d 569, 571 (S.D. 1987) (holding that a performance bond's two-year limitations period was void under South Dakota law, which statutorily prohibited the contractual restriction of a statute of limitations).

GCNA contends that an exception should be made "for a reasonable limitations period as to surety contracts." (Doc. # 61, at 7.) GCNA argues that reasonable limitations periods have been upheld as valid and enforceable in other jurisdictions, citing *Yeshiva University v. Fidelity & Deposit Co. of Maryland*, 500 N.Y.S.2d 241 (N.Y. App. Div. 1986). The *Yeshiva* court allowed the statute of limitations imposed by New York law to be altered by a performance bond's provisions. 500 N.Y.S.2d

9

at 245. *Yeshiva* is not binding on this court and is distinguishable. Unlike in Alabama, New York law expressly provides that parties may contractually limit a statute of limitations. *See* N.Y. C.P.L.R. § 201 (McKinney) ("An action, including one brought in the name or for the benefit of the state, must be commenced within the time specified in this article unless a different time is prescribed by law or a shorter time is prescribed by written agreement."). Furthermore, it is a policy decision for the Alabama state legislature to decide whether a carve out should be created for performance bonds.

Lastly, GCNA could have limited coverage under the bond to a certain length of time. Section 9 is not a limitation on coverage, however, but an attempt to limit the statute of limitations on Sweetwater's claims. Because the six-year statute of limitations on Sweetwater's breach-of-contract claims has not run, Sweetwater has timely filed this action. Summary judgment is due to be denied on GCNA's argument that Sweetwater's claims are time barred under the bond's two-year limitations provision.

**B.    The Parties' Obligations Under the Bond**

Because Wainwright failed to make repairs pursuant to the warranty, Sweetwater turned to GCNA, as the surety, to make those repairs. GCNA contends that Sweetwater cannot and did not fulfill the conditions precedent stated in the bond

10

so as to trigger GCNA's obligation to repair.  GCNA further argues that it has no obligation to uphold the warranty issued to Sweetwater by Wainwright.

### 1. *Extent of Coverage Under the Bond*

Sweetwater asserts that GCNA is obligated under the bond to ensure that Wainwright's obligations under the one-year warranty are fulfilled.  GCNA argues that any claims regarding the warranty are "outside of the terms of the bond and subcontract."  (Doc. # 61, at 2.)  GCNA admits that the bonded subcontract between WCS and Wainwright requires Wainwright to issue a twelve-month limited warranty to Sweetwater upon receipt of the Certificate of Occupancy.  (Doc. # 44, at 14–15.)  It argues, however, that the "bond was designed for and limited to the scope of Wainwright's subcontract" with WCS.  (Doc. # 61 at 2.)

Whether a contract is ambiguous is a question of law for the court to decide.  *Ohio Cas. Ins. v. Holcim (US), Inc.*, 548 F.3d 1352, 1356 (11th Cir. 2008) *(per curiam)* (applying Alabama law).  When the contract is ambiguous, the finder of fact resolves the ambiguity but only if the court cannot reach a resolution by employing rules of contract construction.  *Mega Life & Health Ins. v. Pieniozek*, 516 F.3d 985, 992 (11th Cir. 2008) (*per curiam*) (applying Alabama law).  Terms in a contract are ambiguous "'when given the context, the term[s] can reasonably be open to different interpretation by people of ordinary intelligence.'"  *St. Paul Fire & Marine Ins. Co.*

*v. ERA Oxford Realty Co. Greystone, LLC*, 572 F.3d 893, 898 (11th Cir. 2009) (applying Alabama law) (quoting *Lambert v. Coregis Ins. Co.*, 950 So. 2d 1156, 1162 (Ala. 2006)); *see also Ohio Cas. Ins. Co.*, 548 F.3d at 1356 ("'A contractual provision is ambiguous if it is reasonably susceptible of more than one meaning.'" (quoting *FabArc Steel Supply, Inc. v. Composite Constr. Sys., Inc.*, 914 So. 2d 344, 357 (Ala. 2005))). The parties cannot "create ambiguities by setting forth different interpretations or '[by inserting] . . . strained or twisted reasoning.'" *St. Paul Fire & Marine Ins. Co.*, 572 F.3d at 898 (brackets in original) (quoting *Twin City Fire Ins. v. Alfa Mut. Ins. Co.*, 817 So. 2d 687, 692 (Ala. 2001)). The parties' intent "'is discerned from the whole of the contract,'" and words are given "'their ordinary, plain, and natural meaning'" unless used in a "'special or technical sense.'" *Extermitech, Inc. v. Glasscock, Inc.*, 951 So. 2d 689, 694 (Ala. 2006) (quoting *Homes of Legend, Inc. v. McCollough*, 776 So. 2d 741, 746 (Ala. 2000)).

The language of the bond is unambiguous that the warranty is covered under the bond. Under § 1 of the bond, Wainwright and GCNA, "jointly and severally, bind themselves . . . for the performance of the [subcontract], which is incorporated herein by reference." As discussed previously, the subcontract requires Wainwright to issue a one-year warranty to Sweetwater. It is nonsensical that the subcontract (and in turn, the bond) would only require Wainwright to issue the one-year warranty and not to

fulfill its obligations under the warranty.  Additionally, it is not unprecedented for a performance bond to cover post-completion warranties. *See, e.g.*, *RLI Ins. Co. v. MLK Ave. Redev. Corp.*, 925 So. 2d 914, 922 n.6 (Ala. 2005) (noting that the surety acknowledged that its performance bond covered the principal's warranty obligations where the performance bond "guarantee[d] the full and complete performance of all its contract provisions by its principal"); *Milwaukee Bd. of Sch. Dirs. v. BITEC, Inc.*, 775 N.W.2d 127, 131 (Wis. Ct. App. 2009) (holding that the surety's "liability under the bond necessarily ecompasse[d] warranty work and other contractual responsibility on the part of [the principal] with respect to post-completion obligations"); *AgGrow Oils, L.L.C. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 276 F. Supp. 2d 999, 1016 (D.N.D. 2003) (construing similar bond language to find that the surety's obligations under a performance bond extended to warranties under the contract even though the project had reached substantial completion); *Turner Constr., Inc. v. Am. States Ins. Co.*, 579 A.2d 915, 919 (Pa. Super. Ct. 1990) (permitting an obligee to bring a claim against the surety under a performance bond where the principal had a duty under the contract to remedy any faulty, defective or improper work discovered within one year from the date of acceptance and where the principal failed to do so); *Tudor Dev. Grp., Inc. v. U.S. Fid. & Guar. Co.*, 692 F. Supp. 461, 464-65 (M.D. Pa. 1988) (finding that an obligee could bring warranty claims under the performance bonds because the

bonds incorporated by reference the construction contract which included the warranties); *Sorensen v. Robert N. Ewing, Gen. Contractor*, 448 P.2d 110, 112 (Ariz. Ct. App. 1968) (holding the surety was not discharged from liability on a performance bond where the principal failed to remedy defects in accordance with the bonded contract).

Section 2 of the bond provides that if Wainwright performs the subcontract, then GCNA and Wainwright have no obligations under the bond. There is ample evidence from which a reasonable jury could conclude that Wainwright did not fulfill its warranty obligations. Pursuant to the bond, this would constitute a contractor default, and Sweetwater would be able to turn to GCNA to complete the performance due under the warranty. (*See* Performance Bond § 12.3 (defining constructor default as the "[f]ailure of [Wainwright], which has neither been remedied nor waived, to perform or otewise to comply with the terms of the [subcontract].").

### 2.   *Sweetwater's Ability to Trigger Coverage Under the Bond*

Though the bond covers the warranty issued by Wainwright, there are conditions precedent to trigger GCNA's obligation to perform. In order for a party to trigger a surety's obligation under an AIA A312 performance bond, the following conditions precedent must be met:

> The [party] must give proper notice, call a meeting, discuss the problems, and attempt to resolve them (subparagraph 3.1); then, if the

14

> problems are not resolved, the [party] must declare a contractor default, formally terminating the contractor's right to complete the contract, and must declare the default at least 20 days after giving notice (subparagraph 3.2); and finally the [party] must agree to pay the balance of the contract to the surety or to a new contractor who will complete the contract as originally agreed (subparagraph 3.3).

*Bank of Brewton, Inc. v. Int'l Fid. Ins. Co.*, 827 So. 2d 747, 753 (Ala. 2002). It is undisputed that Sweetwater fulfilled its obligations under subparagraphs 3.1 and 3.2. The point of contention is whether Sweetwater can and did declare a contractor default and terminate Wainwright's contract[3].

GCNA argues that Sweetwater has no standing to declare Wainwright in default because it had no contract with Wainwright. WCS and Wainwright were the parties to the subcontract, not Sweetwater. Sweetwater argues that it has a contract with Wainwright, which is the warranty issued on November 12, 2008.

Neither party addresses Sweetwater's legal ability to satisfy subparagraph 3.2 as a dual obligee on the performance bond. This presents a unique question unanswered by Alabama law: Can a dual obligee, who is not a party to the bonded contract, declare default on the contract? And if not, then how does that dual obligee seek coverage under the bond? If a dual obligee cannot declare default or seek relief from the bonding company on its warranty, then what is the advantage of being a dual

---

[3] It is noted that neither the performance bond nor the subcontract provide the manner in which a party may formally terminate the subcontract.

obligee? Because these questions have not been addressed in the summary judgment briefing and are unanswered under the law, summary judgment is due to be denied as relates to GCNA's argument that Sweetwater has no standing to declare Wainwright in default. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1996) (Trial courts may deny summary judgment where "there is reason to believe that the better course would be to proceed to a full trial.")

C.  **Timeliness of Warranty Claims**

GCNA's last argument is that Sweetwater's request for replacement of the entire drainage system fell outside its one-year warranty. GCNA argues that it was only put on notice of a limited amount of repairs ($14,060 worth) and that only after suit was filed did GCNA learn that Sweetwater contended the entire drainage system was defective. It is undisputed that Sweetwater put both Wainwright and GCNA on notice of needed repairs "prior to [the] expiration of the bonded contract's warranty" on November 11, 2009. (Doc. # 44, at 15.) GCNA has neither cited legal authority nor provided evidence that in order to establish a warranty claim, a claimant must know the full extent of the defects. Sweetwater, on the other hand, has presented evidence indicating that, to make a warranty claim, a claimant only needs to put a contractor or subcontractor on notice of defects within the warranty period; notification of the full extent of those defects is not required. Wainwright was well

16

aware that Sweetwater was making a warranty claim when it sought to have repairs made at the complex. Furthermore Wainwright was put on notice within the warranty period. Provided that these repairs were within the warranty's coverage, Wainwright was obligated to perform these repairs and would be liable for damages incurred as a result. Because "GCNA's liability under the bond is coextensive with that of its principal," GCNA also would be liable, and summary judgment is due to be denied. (Doc. # 44, at 16; *see also* Performance Bond § 2.)

## V.  CONCLUSION

Based upon the foregoing reasons, it is ORDERED that GCNA's Motion for Summary Judgment (Doc. # 43) is DENIED.

DONE this 3rd day of August, 2012.

/s/ W. Keith Watkins<br>CHIEF UNITED STATES DISTRICT JUDGE